22-1200, Jeanna Norris et al. versus Samuel Stanley Jr. et al. Arguments not to exceed 15 minutes per side. Ms. Yunus, you may proceed for the appellants. Thank you. Good morning, Your Honors. I'm Janine Yunus from the New Civil Liberties Alliance and I represent the plaintiffs in this matter. I'd like to reserve three minutes for rebuttal if possible. Sure. This case is about whether MSU's COVID vaccine mandate violated the plaintiff's constitutional rights to bodily autonomy, to decline medical treatment, and to an informed consent. These rights are grounded in the common law and considered part of due process. Under either intermediate scrutiny, which we believe applies in this case, or rational basis, the mandate does not survive either assessment. Well, okay, so level of the Supreme Court's, in the slaughterhouse cases, said privileges and immunities is basically a dead end. So if we take, if we stipulate to that, it would seem like the Constitution has very little to say about the practice being challenged here. Well, I read the Constitution, I don't see anything in there about bodily autonomy and the things you just described. So why is in this rational basis? Well, this is part of substantive due process and these rights go back to the common law. That's not part of the Constitution either. I mean, that's, that's a doctrine and so substantive due process, that's, so that's what we're dealing with here. That's how you would get to intermediate. Yes, it's incorporated into the 14th Amendment, substantive due process. Well, the due process clause is, but substantive due process, you won't see those words anywhere in the Constitution. So we're talking about a doctrine. Sure, I agree with that, but I mean, even Jacobson, which we obviously are contending, well, first of all, that it has been wrongly... So you have two problems here. The Constitution doesn't seem to speak to this and you have a Supreme Court case that seems pretty close on point, saying a state and, more to the point, a local state instrument can do what MSU did here. Well, I've just put my cards on the table. Sure, a few things. Jacobson, first of all, didn't say that any vaccine mandate, well, obviously didn't use rational basis because that tiered scrutiny hadn't been developed, but Jacobson didn't say... He pretty much did rational basis, it would look like. Well, we, we differ on that point. I, I believe that the, you know, there's talk about a substantial relationship between the law and the, or the ends and the means. There's an evaluation of the rights of the individual balanced against those of the state, which I don't think rational basis, the rational basis test takes into consideration, certainly not the sort of the one that's used today. But Jacobson, very clearly, even if Jacobson applied rational basis to that vaccine mandate, Jacobson itself said that it does not apply to every case and every vaccine mandate. It was, it was very specific that it confined itself to the facts of that case. And some of those facts were the deadliness of smallpox. Smallpox posed a risk to all. The vaccine was sterilizing there. It stopped transmission. The COVID vaccines don't, as, as we all know. And certainly not in the case, it does not, they do not stop transmission more in the case of people with natural immunity as our plaintiffs have here. So that's another big difference with Jacobson. It's just, it's, it's, it's really a large request to, or it's, it's just a quite significant thing to say that the sorts of things to which you just alluded, natural immunity versus vaccine immunity, the severity of the strain at any particular time, that those are, are matters for judges to decide. I mean, you know, there are cases where we say an agency shouldn't be doing what it's doing because it's legislating or whatever. You know, a lot of what we do is allocation of power. It just strikes me as awfully strange that judges somehow would be the ones to decide the very kinds of things you're talking about. Your Honor, Jacobson itself said that sometimes the judiciary might be required to intervene in such a situation where there's a mandate that's so unfair or irrational. As I posit MSU's mandate is here, especially applied to plaintiffs who have naturally acquired immunity. We don't even know what that is. None of us knows what that is. I mean, you know, it's something, but, I mean, like... It wears off. That's what I don't understand. Were your clients saying, I don't want to get it now, but I'll get it in, in four months when my immunity's worn away? Your Honor, it wears off. We don't know exactly how much or how quickly. So does vaccine immunity, which is the point here. It doesn't make sense to accept vaccine immunity indefinitely when not accepting natural immunity indefinitely. But given the fact that the vaccines don't stop transmission, I think there's a real question about whether there's any kind of public health rationale for this vaccine. And again, that presents a very different case from Jacobson, where it was about ending the epidemic, stopping transmission. We simply don't have that here. Why shouldn't this be something that is thrashed out in a state legislature and just go make the case there and you can have all these experts on each side testify in front of committees? I mean, like, how are, how are we supposed to adjudicate, like, make judgments about it wears off, it doesn't wear off? This thing is just as good as that thing. Like, are we going to develop a record where we're sort of like, you know, epidemiologists of last resort in this case? Your Honor, the fact that we're having this discussion, I think, shows why the district court was wrong to throw it out. We're not asking you to do that. We're asking you to recognize that the court actually conducted a factual inquiry here when it really should not have. Looked in the light most favorable to us. The facts established that, that the plaintiff's immunity was as strong and so this may not even have survived a rational basis review as the court, as the court held, applied to this case. Although, again, we depart from that, but even if rational basis applies, that's, this mandate does not survive that. Or at least that's a factual dispute and this ought to have gone through the discovery process. We don't even know what MSU's basis was for this mandate. We don't know what they looked at. We don't know what science there was. And I'd also point to the fact that they accept the Chinese Sinopharm and Sinovac vaccines, which have very low efficacy rates, aren't accepted by the CDC. So the fallback of, well, it's CDC guidance. We're relying on CDC guidance. They want to have it both ways and I don't think that they should be able to do that. And at the very least, this is a factual issue that should have been put before a jury or should have been allowed to proceed to discovery rather than being resolved at the motions-to-dismiss stage. I understand that's a discrete argument, so that's helpful. Have you got any authority from the Supreme Court or even lower courts that would parse out Jacobson the way you've described it, the way we should narrow it, the holding? So far, not the Supreme Court. There was a Seventh Circuit decision very recently. It began with an L and it has a lot of vowels. Is that the Easterbrook case? No, that's not the Easterbrook case. I mean, the Easterbrook case is quite unfavorable against you. I admit that that is not. I mean, you've got a lot aligned here that you have to deal with. I mean, you would, we would have to be creating a circuit split with the Seventh Circuit, if we want your way, in light of this Easterbrook case, it seems like to me. Well, the Easterbrook case, I believe, was somewhat different. First of all, it was students. Yeah, but that's it. Wouldn't they have a stronger argument for not having to comply versus the employee? I mean, the employee, you're kind of giving up some rights, aren't you, by agreeing to the, or you have lesser expectations of things than a student who's simply, you know, not getting any, not doing this for a payment from the university they're attending. Well, I suppose that could cut the other way as well, though. I mean, because employees do have, state employees do have rights and that's where the Unconditional Conditions Doctrine comes in, which we also use to argue this similar point. I mean, the state, or MSU, as a branch of the government, cannot leverage their constitutional rights, which we discussed earlier, in order to get them, cannot force them to surrender those rights in order to get them to comply. But that, is it fair, this is just a technical question, is it fair to say that that argument is derivative of the primary argument of constitutional entitlement or protection? Absolutely, yes. I mean, I appreciate that. If you'd like me to go back to the Seventh Circuit case, though, I will not be able to pronounce this, but it's Lucas versus Cook County. I'm sorry. It's L-U-K-A-S-Z-C-Z-Y-K versus Cook County and it's from, I believe, August of this year. And there, it observed that Jacobson was distinguishable from the current vaccine mandates, citing the fact that the COVID vaccines aren't sterilizing and the attack rate of COVID is much lower than the death rate. The court indicated that it could potentially be convinced, but there that the plaintiffs had failed to adequately develop a record in terms of the science about, well, natural immunity was actually one of the contentions there, but the science as well as the basis for the mandate. Also, that case was decided at the preliminary injunction stage, which is, of course, a much different standard than we have here. So, again, we're arguing that the court should not have dismissed this case and we're asking to be able to go back and make the case there. So, I mean, so I understand you're making a separate argument where one of your arguments is that you have stated a claim that the vaccine mandate fails rational basis scrutiny. Absolutely, yes. I mean, again, I want to write it. Even if we say, okay, it's really not in the constitution, but we're just going to say you can't be totally arbitrary, which is what Jacobson said. You know, even under all that, hey, we've stated rational basis and you shouldn't have kicked us out. Right, and Jacobson said that, but there's also subsequent case law. We cited Harper, for instance, which talks about how the forcible injection into a non-consenting person's body is a substantial violation of that person's right, again, you know, using substantive due process. And Harper, it was about the administration of psychotropic drugs like a number of the other cases that we cited, but Harper didn't, it talked about forcible injection. It did not talk about any effect on the mind or anything like that. So those subsequent cases, I believe, provide additional support for our contention that a higher level of scrutiny than rational basis applies to this case. Okay, well, you can finish up while it's still yellow or... I just, one final point, again, the judge relied on the CDC guidance saying that natural immune people should get the vaccine, even if the vaccine provides additional protection, which I think the judge is very clear that it does. Guidance and a mandate are different. The CDC guidance is based upon, you know, benefit to the individual. It's not a broader public health concept. And so, you know, the CDC also recommends that people eat their meat well done, but if MSU started firing people for eating their meat medium rare, I think we might call that irrational or we should call that irrational. So I think likewise here, this was not a public health measure and should not be recognized as such. Okay. Thank you very much, Your Honor. Thank you. We'll hear from Ms. Gutwein. Good morning, Your Honors, and may it please the court. My name is Stephanie Gutwein and I'm here on behalf of the Michigan State University defendants. The policy that Michigan State University implemented in summer of 2021 requiring its students, faculty, and staff to be fully vaccinated for COVID-19 or obtain a medical or religious exemption for the fall 2021 semester is constitutional. And the district court's order upholding that policy and dismissing the plaintiff's first amendment complaint should be affirmed. Plaintiffs have no fundamental interest in avoiding an employee vaccine mandate. And Michigan State's policy is reasonably related to legitimate government interests. Because the policy is constitutional, it does not affect an unconstitutional condition. And because it doesn't conflict with the emergency use authorization provisions of the Federal Food, Drug, and Cosmetic Act, it is not preempted. Unless there's a specific place the court would like to start, I can start with the substantive due process claim. Why doesn't the complaint allege a plausible rational basis challenge to the regulation? Under rational basis scrutiny, Your Honor, the plaintiffs have the obligation to negate every conceivable basis for I think here there's no dispute about the legitimate interest that Michigan State had in implementing that policy in terms of recognizing in terms of furthering the safety and the public health of its community, of its students, faculty, and staff, and the surrounding community. So the dispute here really concerns the reasonableness of the policy for purposes of substantive due process. And under this court's own precedent, the materials, both the allegations and plaintiff's as well as the materials that they attach to their complaint and the records that they cited or referenced in their complaint, which would all constitute a part of that pleading, demonstrate at minimum what the district court found. And I think what opposing counsel has conceded today, which is there is at least debate about the efficacy of a vaccine for someone who has previously been infected for COVID-19 or things like we don't know how long immunity might last or how much immunity someone might have from previous infection. MSU obviously disputes some of those facts, but even taking those for purposes of, for purposes of, excuse me, even taking those as true for purposes of MSU's motion, that is enough for MSU's policy to satisfy rational basis scrutiny. And so it wouldn't state a claim that needs to get past the motion to dismiss. If somebody had had COVID shortly before the semester started, that person would have been entitled to some sort of medical postponement. I mean, they say you shouldn't get it within a certain amount of time after having COVID. You shouldn't get the vaccine. They tell you to wait. So, but that person, there would have been a procedure for that person just to get permission to wait 90 days, I assume, or not. So MSU's policy permits the opportunity to apply for a medical exemption. But in that factual scenario, my understanding is that, let me back up, the medical exemption aspect of MSU's policy tracks the CDC's contraindications for getting a vaccination or if you have, if you qualify under the ADA. And so my understanding is that the CDC's contraindications would not include that scenario that you just outlined. And so I, my expectation would be that under MSU's policy, that individual would still be expected to be vaccinated. If I'm incorrect in the CDC's indications... No, I'm probably misinformed, not you. Well, so it would, the point being, it would track what the CDC has said is a contraindication. Okay. So I want to talk about, yes, Your Honor. It seems to me that having something injected into your body is a little different from your normal rational relation test where, you know, do you have to, I mean, there are all sorts of things we have to do that we may say, this makes absolutely no sense. And, you know, the law says, well, we're going to, if there's any rational explanation, that's enough. But most of those things, you know, like you have to stop at a red light, even if there are no cars around. This seems to be a little different. I understand that practically speaking, there's a difference between getting vaccinated and stopping at a red light with no cars around. I appreciate that. Under binding precedent though, the rational basis test is what applies. The Supreme Court established that, although it predates modern tiers of scrutiny, that's what Jacobson says. The Supreme Court confirmed that 20 years later in mandatory public vaccination requirements. I think the distinguishing factor here, which distinguishes this case from some of the other cases that plaintiffs have cited, Washington versus Harper, those types of cases, is this vaccination is intended to promote public health and safety. And that way it's more similar to the red light concept, which is it's a public safety requirement. So even if it seems unreasonable to some, the governing body and not the court is in the best position to assess how to best promote that public health and safety. The right here is unenumerated that we're talking about. And so it's plaintiff's burden to show that it's deeply rooted in the nation's history and tradition if they're going to advance that it's fundamental. And they can't. Jacobson demonstrates that if anything, what's deeply rooted in our nation's history is public vaccination requirements. There's a longstanding history of those requirements. There's simply no other case that has held otherwise. And we brought up the Seventh Circuit decision in Clawson by Judge Easterbrook. I just want to point out that the Ninth Circuit, just before Thanksgiving, decided the Caridy decision, which is on all fours with this case. It's an employee of a public university who alleged that he had natural immunity and so should be exempt from the public university's vaccination requirement. The Ninth Circuit there decided to apply Jacobson. So there would be a circuit split here if you What about Ms. Young's point that the Seventh Circuit case came at summary judgment? It didn't get broomed on 12 v. 6 the way this one did. I want to make sure we're talking about Easterbrook case. The Easterbrook case was actually at the preliminary injunction stage. It was an appeal from the denial of a preliminary injunction by the district court. And so, I mean, ostensibly, there was more discovery there, Your Honor, than there was here in terms of the evaluation. But the court decided, as a matter of law, that Jacobson applied to the substantivity process claim. It's not a discovery issue there. You know, they specifically criticize MSU's, as they put it, you know, blithe statement that, as to natural immunity, oh, well, the vaccine provides additional protection. I mean, why? And they say, you've got zero scientific evidence supporting that. I mean, why isn't that, you know, a pretty good rational criticism that, you know, here we have this sort of conclusory mantra that one seems to hear a fair amount, but at least MSU, as it's promulgated this thing, hasn't provided any basis for that. And maybe it's irrational as to, you know, maybe there's, they've stated a claim of irrationality, at least to the natural immunity people, which seems to be the focus of their complaint. I'd like to respond to that with three points, if I may. First, rational basis scrutiny does not require any kind of basis put forth by MSU or evidence at the time it enacts the policy. As you know, it can be based on speculation or hypotheticals. So like any conceivable basis, including during litigation? That's right, Your Honor, except that I would submit that we've shown much more than that during this litigation, even through the allegations of plaintiff's amended complaint. We spend about the first 15 pages of our brief, I think, walking through various points in plaintiff's amended complaint that demonstrate that there is conceivable basis, even with the evidence that plaintiffs have submitted, that vaccination increases immunity in individuals who have previously had COVID-19, and thus it causes them to be less likely to be reinfected, which helps mitigate spread. We've also pointed out that there's no FDA-approved or authorized test for immunity in measuring an individual's antibodies. The level of antibodies under their own experts' evidence that someone is likely to obtain through previous infection is very individual-specific, highly dependent on characteristics of that individual. And so there's simply evidence before the court. So you're saying there's plenty of conceivable basis and they didn't have to sort of recite it in their policy? Yes, Your Honor. Both of those things are true. And the third point that I would make is that rational basis scrutiny doesn't require MSU's policy to be perfectly tailored, that the fit is perfectly tailored. Allegations that it's under- or over-inclusive, which MSU obviously doesn't agree with, but that wouldn't preclude it from satisfying rational basis scrutiny. And in this situation where everybody's response is so varied and different, you're trying to get a policy that basically covers everybody? That's correct, Your Honor. Certainly MSU's interest is to cover as many people as possible to promote public health and safety. I think the other point that you've just touched on is it has to be administratively feasible for MSU to implement. And frankly, if MSU were to try to include some sort of natural immunity exception, it would still have to engage in a ton of line drawing. And probably we'd be right back in front of the court. What's too long after an infection to qualify what kind of doctor's opinion is sufficient enough to establish natural immunity when you don't have any kind of FDA approved or CDC guidance on the measure of immunity? So there are all kinds of questions that would be contemporaneous with even thinking about some kind of implementation of that type of policy. And that MSU made the judgment, especially in light of all of the public health guidance, that it's beneficial for individuals who have previously been infected with COVID-19 to be vaccinated. That's a reasonable judgment to make. And that's true on the allegations that constitute plaintiffs pleading before you on a motion to dismiss, before the district court. And there are exemptions allowed for medical and religious under this vaccine mandate? Yes, Your Honor. There are both medical and religious exemptions available. Any statistics or idea of how many of those have been granted? I'm glad you asked, Your Honor. Yes. It's not in the record, but I can tell you that they don't divide it up by employees and students. What I know is there are approximately 65,000 people on campus. My understanding is that there have been about 6,000 exemptions, about 5,000 of those related to religious exemptions, and about 1,000 related to medical. Okay. This is not our first rodeo. I understand. All right. Well, you know, whatever. You can use your time or not. It's up to you. If there are no further questions, Your Honor, we would ask this court to affirm the district court. Thank you very much. Okay. Thank you. We'll hear a rebuttal. Thank you. So a few things. We haven't conceded, and the studies that we presented don't show that getting the vaccine, if you have natural immunity results, it increased immunity or reduced risk of transmission. There may, may be a small boost in antibodies, which appears to be very temporary, and that doesn't necessarily translate into a clinical benefit. In fact, our experts think that it very likely does not, and there's simply no real-world evidence that it does. So again, this, you know, that... Would a rational person think that it might provide a significant benefit? I don't think there's any scientific evidence, so no. I mean, it seems to be sort of, frankly, people who might not have that much background in immunology appear to believe that a boost in antibodies translates into a clinical benefit, but immunology is actually much more complicated and involves B and T cells, and as well as antibodies, and simply a certain... I thought antibodies were the first line of defense from getting infected, and then T cells are something that kind of make it less severe. That is true, but you have residual... Not that I'm qualified to talk about this. Unfortunately, I've learned a little bit too much about being, more about B and T cells than I ever wanted to, but from what I understand, immunity is more complicated, and so simply a higher level of antibodies doesn't necessarily translate into a clinical benefit for the individual, and there's no evidence it does in terms of stopping transmission, which, again, is the only basis for a public health rush, or sorry, for a vaccine mandate. It's the only public health rationale. I want to also point out that another difference with Jacobson, in addition to those I cited earlier, is that the smallpox vaccine had been around the better part of a century, which the court also cited as evidence that we have a century's worth of evidence that this is not a dangerous vaccine, and we're not alleging that this is a particularly dangerous vaccine, but of course, you cannot know the long-term effects of a vaccine that hasn't been around long-term, and this one has not. This one's only been around about two years, and when MSU was mandating it, it had only been widely in distribution for a few months, so that's a very different situation. Also, at the time the mandate began, it was an EUA-only vaccine, which the smallpox vaccine in Jacobson was not. The mandate remains in place? The mandate remains in place, and in fact, there's a booster mandate for both employees and students. And you're making a facial challenge here? Is that? For on behalf of people with natural immunity. I see. I think there are questions about, you know, whether it should be mandated at all, our case is limited to that. And finally, I'll just reiterate anything that my opponent said about natural immunity is true of the vaccine. So if you say, we don't know how long it lasts, we don't know what level is right, but those things are all true of the vaccine, and so it's really this myth that you just inject someone with the vaccine, and suddenly they have this immunity. Everyone who's lived over the past year and a half knows that that's simply not true. So again, it just doesn't make sense. And at the very least, there's a strong argument that there was no rational basis and that this should have been permitted to go forward with discovery in the trial court. Just one quick question. I mean, I'll confess, I haven't reviewed every line of your exhibits here. Do you have any evidence of people getting infected a short time? I mean, as to, you know, protection against infection, do you have evidence showing that instances or evidence of people getting infected within, you know, say a month or two? From the vaccines? Yeah. We did not put that in our briefings, but I do know people who did it. All right. Okay. Very good. Well, thank you both for your arguments. Case will be submitted and clerk may adjourn court.